# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

PLESSEN EYE, LLC,               )

                                 )

            **Plaintiff,**       )

                                 )     **Case No. 1:25-cv-0026**

            **v.**              )

                                 )

MARSHALL AND STERLING    )
ENTERPRISES, INC., MARSHALL   )
AND STERLING ST. CROIX, INC.   )
and CERTAIN UNDERWRITERS AT  )
LLOYD'S OF LONDON ON POLICY NO. )
B1230GP02941A17,             )

                                 )

           **Defendants.**    )

                                 )

ATTORNEYS:

LEE J. ROHN, ESQ.
RHEA LAWRENCE, ESQ.
LEE J. ROHN & ASSOCIATES
ST. CROIX, U.S.V.I.
     *FOR PLAINTIFF PLESSEN EYE, LLC*

GREGORY LEE MAST, ESQ.
FIELDS HOWELL LLP
ATLANTA, GA
MARSHALL N. LAHIFF, ESQ.
FIELDS HOWELL LLP
JOHN GOLDEN, ESQ.
MIAMI, FL
     *FOR DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON ON*
     *POLICY NO. B1230GP02941A17*

ROBERT J. KUCZYNSKI, ESQ.
LAW OFFICE OF BECKSTEDT & ASSOCIATES
ST. CROIX, U.S.V.I.
     *FOR DEFENDANTS MARSHALL AND STERLING, INC. AND MARSHALL AND STERLING ST. CROIX*

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 2 of 24

### MEMORANDUM OPINION[1]

**ROBERT A. MOLLOY, Chief Judge**

**THIS MATTER** comes before the Court on Plaintiff Plessen Eye, LLC's ("Plaintiff")

Motion to Remand to Superior Court of the Virgin Islands, filed on July 21, 2025. (ECF No.

21.) Defendant Certain Underwriters at Lloyd's of London on Policy No. B1230GP02941A17

("Defendant Underwriters") filed an Opposition on August 22, 2025. (ECF No. 45.) Plaintiff

filed a Corrected Reply on October 1, 2025.[2] (ECF No. 53.) For the reasons discussed below,

the Court will grant Plaintiff's Motion to Remand and remand this case to the Superior Court

of the Virgin Islands.

### I.    BACKGROUND

Plaintiff filed its Original Complaint in the Superior Court of the Virgin Islands on

September 20, 2019. (ECF No. 1-1 at 2.) The Complaint alleged that sometime prior to

September 2017, Plaintiff approached Defendant Marshall and Sterling, Inc. and Defendant

Marshall and Sterling St. Croix, Inc. (the "Marshall and Sterling Defendants")—who were

acting as then-Defendant Thompson Health and Bond, Ltd.'s ("THB") agents—to purchase

insurance for Plaintiff's business located at 5 Orange Grove, Christiansted on St. Croix.[3] *Id.* at

¶ 25. Plaintiff alleged that thereafter, THB provided Plaintiff with business insurance from

---

[1] Due to the retirement of the judge previously assigned to this case, the undersigned, exercising his authority as Chief Judge of the District Court, reassigned this case to himself on February 17, 2026.

[2] Plaintiff and Defendant Underwriters negotiated a 30-day extension on August 25, 2025. (ECF No. 47.) Plaintiff filed its initial reply on September 29, 2025, ECF No. 50, and its Corrected Reply a few days later.

[3] The Complaint refers to Plaintiff's property as being located at "5 Orange Grove, Christiansted, St. Thomas, VI 00820." *Id.* at ¶ 25. However, as Christiansted is located on St. Croix, not St. Thomas, and the zip code 00820 refers to a postal zone on St. Croix, the Court presumes the reference to St. Thomas to be a typographical error, and understands the property at issue to be located at 5 Orange Grove, Christiansted on St. Croix.

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 3 of 24

May 26, 2017 to May 26, 2018. *Id.* at ¶ 26. After Hurricane Maria caused damage to the Orange Grove property in September 2017, Plaintiff alleged that the Marshall and Sterling Defendants and THB committed misconduct regarding the benefits Plaintiff was entitled to under this insurance policy ("the Policy"), including hiring improper and incompetent adjusters, misinterpreting the insurance policy in order to withhold payment, devaluing Plaintiff's claim, failing to pay Plaintiff in accordance with the insurance policy, failing to provide adequate explanation for its claim denial, and misrepresenting the nature and extent of the insurance coverage which Plaintiff held. *Id.* at ¶¶ 32-62.

On November 12, 2020, Plaintiff filed a Motion to Amend its Original Complaint in Superior Court, requesting to replace THB with Defendant Underwriters.[4] *Id.* at 77. A red-lined version of the Amended Complaint was attached to the Motion to Amend as Exhibit 1. *Id.* at 105-25. On March 17, 2022, the Honorable Alphonso G. Andrews, Jr. of the Superior Court of the Virgin Islands granted the Motion to Amend.[5] *Id.* at 130. On April 14, 2025, Plaintiff filed a summons for Defendant Underwriters in Superior Court. (ECF No. 1-1 at 131.) On May 21, 2025, Defendant Underwriters received the summons, along with the "Second Amended Complaint." (ECF No. 1-1 at 131.)[6]

On June 11, 2025, Defendant Underwriters removed the case to federal court, pursuant to 9 U.S.C. §§ 203 and 205, asserting that the action "is removable to this Court

---

[4] Plaintiff represented that it learned that THB was not Plaintiff's insurer, but instead a member of the Lloyd's of London syndicate underwriting the Policy. *Id.* at 77.

[5] This, in effect, dismissed THB from the case.

[6] The "Second Amended Complaint," *id.* at 133-53, does not appear to have been filed in Superior Court case. *See* No. SX-2019-CV-00500. However, both parties treat it as the operative complaint in this matter, so the Court will also treat it as such. (ECF No. 1 at 1; ECF No. 22 at 17).

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 4 of 24

under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards," which was implemented by Congress through the Federal Arbitration Act. (ECF No. 1 at 4.) In response, Plaintiff filed the instant motion to remand.[7] (ECF No. 21.)

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA")[8] "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009). The FAA was designed to counteract "the traditional judicial hostility" toward enforcing arbitration agreements and paved the way toward today's "strong federal policy in favor of arbitration." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (citation modified). This is particularly true in matters of international arbitration agreements, which the Supreme Court has indicated are "even more favored than domestic ones" and that therefore courts must sometimes enforce these agreements even where "a contrary result would be forthcoming in the domestic context*." Suter v. Munich Reinsurance Co.,* 223 F.3d 150, n. 3 (3d Cir. 2000) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 629 (1985)).

"An arbitration provision in an international commercial agreement is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards." *Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 448-49 (3d Cir. 2003). In 1970,

---

[7] Separately, Defendant Underwriters has filed a motion to dismiss, ECF No. 2, and a motion to compel, ECF No. 3. The Marshall and Sterling Defendants have also filed a motion dismiss, ECF No. 8. The Court deemed it appropriate to resolve the motion to remand prior to the resolution of any other pending motions. In light of the Court's ruling on the motion to remand, these pending motions are now moot.

[8] 9 U.S.C. § 1 to § 402, also referred to as the United States Arbitration Act.

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 5 of 24

the United States acceded to the Convention on the Recognition and Enforcement of Foreign

Arbitral Awards. June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("the Convention").[9]

Following that, Congress implemented the convention through that passage of Chapter 2 of

the United States Arbitration Act, codified at 9 U.S.C. § 201 *et seq*.[10] *See Scherk v. Alberto-*

*Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *see also Ario v. Underwriting Members of Syndicate*

*53 at Lloyd's*, 618 F.3d 277, 288 (3d Cir. 2010), *as amended*, (Dec. 7, 2010) (stating, in

relevant, that the FAA contains a "domestic FAA" codified in Chapter 1 of the FAA, while

Chapter 2 is "the Convention's implementing legislation"). "[T]he principal purpose for

acceding to the Convention was to 'encourage the recognition and enforcement of

commercial arbitration agreements in international contracts and to unify the standards by

which agreements to arbitrate are observed and arbitral awards are enforced in the

signatory countries.'" *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d

Cir. 2006), *as amended on reh'g*, (Sept. 28, 2006) (citation omitted); *accord Suter v. Munich*

*Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000). "The domestic FAA applies to actions

brought under the [Convention] to the extent that the two are not in conflict." *Century Indem.*

*Co.*, 584 F.3d at 523 (citation omitted).

> With regard to removal, 9 U.S.C. § 205 provides in pertinent part:
>
> Where the subject matter of an action or proceeding pending in a State court
> relates to an arbitration agreement or award falling under the Convention, the
> defendant or the defendants may, at any time before the trial thereof, remove

---

[9] The Convention is often referred to as the New York Convention. *See Invista S.à.r.l. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010).

[10] As emphasized by the Third Circuit, "the Convention and Chapter 2 of the FAA are distinct. The Convention is the multilateral treaty to which the United States acceded. Chapter 2 of the FAA is the implementing legislation for the Convention, and it provides the mechanism for enforcement of the Convention in United States courts." *Ario*, 618 F.3d at 286 n.7 (citing 9 U.S.C. § 201).

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 6 of 24

such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal[.]

*See also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1642 (2020) (stating that Section 205 "authorizes the removal of an action from state to federal court if the action 'relates to an arbitration agreement . . . falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]'").[11]

## III.    DISCUSSION

Defendant Underwriters removed this case to the District Court pursuant to 9 U.S.C. §§ 203 and 205. (ECF No. 1 at 1.) In its view, this action arises out of the alleged misconduct surrounding the Policy, which contains an arbitration clause governed by the Convention, and thus removal is proper pursuant to 9 U.S.C. § 205. *Id.* at 2-4. Section 205 permits removal when "the instant matter '*relates to*' an arbitration agreement *falling under the Convention*." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, Civil No. 2005-cv-6004, 2006 U.S. Dist. LEXIS 34177, at *4 (E.D. Pa. May 18, 2006) (emphasis added)[12]; *see also Beiser v. Weyler*, 284 F.3d 665, 671 n.7 (5th Cir. 2002) ("Under the plain language of the statute . . . the plaintiff's case must relate to an agreement 'falling under the Convention' in order for the district court

---

[11] Additionally, 9 U.S.C. § 203 states: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *See also Century Indem. Co.*, 584 F.3d at 523 ("Actions under the New York Convention are deemed to arise under the laws and treaties of the United States. 9 U.S.C. § 203. The FAA empowers district courts to compel arbitration in accordance with agreements, 9 U.S.C. § 206, and to enforce awards, 9 U.S.C. § 207, falling within the New York Convention.").

[12] *See supra, aff'd sub nom. Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513 (3d Cir. 2009).

to have jurisdiction."); *Silec Cable S.A.S. v. Alcoa Fjardaal, SF*, Civil No. 2012-01392, 2012 U.S. Dist. LEXIS 167020, at *22 (W.D. Pa. Nov. 26, 2012) ("[T]he plain language of section 205 . . . affords defendants the ability to remove a case that 'relates to an arbitration agreement or award under the Convention.'").

Plaintiff argues that the FAA is inapplicable and thus the instant case was improperly removed. Plaintiff further argues that, to the extent that Defendant Underwriters did have any right of removal, it has waived that right. Plaintiff makes two arguments pertaining to the applicability of the FAA in the instant matter, namely that: (1) the Policy contains no valid arbitration clause which could provide an independent basis for removal, ECF No. 22 at 10-11; and (2) all Plaintiff's claims are made pursuant to local Virgin Islands law, *id*. at 17. Plaintiff makes three arguments pertaining to Defendant Underwriters waiver of any right to remove in the instant matter, namely that: (1) the Policy contained an exclusive forum selection clause placing jurisdiction in the territorial courts of the Virgin Islands, which the arbitration clause does not override, *id*. at 3-9; (2) the Marshall and Sterling Defendants are Defendant Underwriters' agents and have waived Defendant Underwriters' right of removal by actively litigating this matter in superior court since 2019, *id*. at 12-13; and (3) the arbitration agreement itself is invalid because Defendant Underwriters waived any right to arbitrate by filing a motion to dismiss on the merits, thereby invalidating the arbitration agreement, and making removal on the basis of this clause inappropriate, *id*. at 14-16.

When examining removal under Section 205, the Court looks solely to the filings pertaining to the notice of removal to determine whether removal is proper. *See Beiser*, 284 F.3d at 671 ("[J]ust as we determine whether a plaintiff's claim arises under federal law from

the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the 'petition for removal' alone."). Therefore, whether a case has been properly removed is a separate question from the merits of whether arbitration can be compelled. *See id.* at 671-72 (noting the importance of "keep[ing] the jurisdictional and merits inquiries separate"); *Century Indem. Co.*, 2006 U.S. Dist. LEXIS 34177, at *8 (following *Beiser* and stating that "[t]he Court must accept jurisdiction before it can determine whether an arbitration agreement existed"); *Silec Cable S.A.S.*, 2012 U.S. Dist. LEXIS 167020, at *27 ("[S]uch a determination of whether the case is arbitrable or not is beyond the scope of the Court's limited inquiry to decide if subject matter jurisdiction has been established under section 205."). As courts have noted:

> Under § 205, however, the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits. The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court.

*Beiser*, 284 F.3d at 674-75; *see also Century Indem. Co.*, 2006 U.S. Dist. LEXIS 34177, at *6-7 (finding the reasoning in *Beiser* persuasive).

Thus, the Court will first address whether the removal was proper under Section 205, then turn to Plaintiff's arguments regarding whether Defendant Underwriters waived that right of removal, and finally address whether Defendant Underwriters waived its ability to remove by waiving its right to arbitration in filing its motion to dismiss.

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 9 of 24

### A. The Propriety of Removal pursuant to the FAA

As an initial matter, the Court must determine whether subject matter jurisdiction has been established. Defendant Underwriters attached the Policy to its Notice of Removal. (ECF No. 1-2.)[13] The Policy, labeled with the Unique Market Reference B1230GP02941A17, was issued to Plaintiff for the location of #6 Orange Grove, Lot 5, Christiansted, St. Croix, U.S. Virgin Islands, effective from May 26, 2017 to May 26, 2018. *Id.* at 3. Section 9, Paragraph 12 of this Policy contains an arbitration provision which states:

> If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.
>
> The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

*Id.* at 18-19.

For Defendant Underwriters to meet the Section 205 requirements, it must show that the action *relates to* an arbitration agreement *falling under the Convention*. *Luna Music, LLC v. Exec. Ins. Servs., Inc.*, Civil No. 2020-0002, 2022 U.S. Dist. LEXIS 97856, at *12-13 (D.V.I. June 1, 2022).

The subject matter of an action "relates to" an arbitration agreement under the Convention when that arbitration agreement "could *conceivably* affect the outcome of the

---

[13] Plaintiff does not argue that this is not an accurate copy of the Policy at issue.

plaintiff's case." *Beiser*, 284 F.3d at 669; *accord Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012); *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011); *Silec Cable S.A.S.*, 2012 U.S. Dist. LEXIS 167020, at *22; *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018), *rev'd and remanded on other grounds sub nom. GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020); *Century Indem. Co.*, 2006 U.S. Dist. LEXIS 34177, at *6-7. Whether an arbitration agreement "relates to" a case should be determined by looking exclusively to the petition for its removal and the pleadings, no "merits-based inquiry" is necessary nor proper. *Silec Cable S.A.S.*, 2012 U.S. Dist. LEXIS 167020, at *22. Therefore, "[r]esolving the question of whether the agreement falls under the Convention will ordinary prove quick and easy, without requiring too much merits-like investigation by the district court." *Beiser*, 284 F.3d at 672. This "easy removal standard" is in stark contrast from the general rule requiring strict construction of statutes conferring removal jurisdiction. *Amato v. KPMG LLP*, 433 F.Supp.2d 460, 477 (M.D. Pa. 2006), *vacated in part on reconsideration on other grounds*, 2006 U.S. Dist. LEXIS 57091 (M.D. Pa. Aug. 14, 2006).

Defendant Underwriters in its Notice of Removal argues that the "relates to" requirement has been met because "[t]he arbitration agreement covers disputes between the Parties regarding 'any aspect of this Policy'" and "[t]he Superior Court Action is predicated on [Lloyd's] duties and obligations under the Policy and their alleged breaches thereof." (ECF No. 1 at 9.) The Court agrees with Defendant Underwriters' interpretation. The Complaint alleges that Defendant Underwriters issued Plaintiff insurance for its business located at 5 Orange Grove and breached its obligations under the Policy. (ECF No.

1-1 at 5.) The arbitration clause at issue provides that the parties shall arbitrate "[i]f the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy." (ECF No. 1-2 at 18-19.) Thus, the Court easily finds that the arbitration clause could conceivably affect the outcome of this action. *See Silec Cable S.A.S.*, 2012 U.S. Dist. LEXIS 167020, at \*26 ("[Defendant's] arbitration defense set forth in its Notice of Removal is sufficient to demonstrate that it 'relates to' an arbitration agreement under the Convention. The arbitration provision in the Purchase Order plainly sets forth that *any* dispute between the two international entities should proceed to arbitration[.]").

In determining whether an agreement "falls under" the Convention, the Court of Appeals for the Third Circuit instructs courts to look at four factors: (1) whether there an agreement in writing to arbitrate the subject of the dispute; (2) whether the agreement provides for arbitration in the territory of a Convention signatory; (3) whether the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) whether a party to the agreement not an American citizen, or whether the commercial relationship has some reasonable relation with one or more foreign states. *See Std. Bent Glass Corp.*, 333 F.3d at 449 & n.13; *Century Indem. Co.*, 584 F.3d at 523 n.8; *Ario*, 618 F.3d at 286.

In regard to the first factor, the Policy, ECF No. 1-2, which serves as the insurance contract between Plaintiff and Defendant Underwriters, includes a written agreement to arbitrate. *See Std. Bent Glass Corp.*, 333 F.3d at 449 ("The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." (quoting the Convention at Article II,

Section 2) (internal quotation marks omitted)). Plaintiff argues that there is no valid arbitration clause providing an independent basis for removal (ECF No. 22 at 9-12, ECF No. 53 at 1 n. 1.) However, the Court does not need to find that, and in fact at this early stage may not examine whether, the "agreement in writing to arbitrate the subject of the dispute" is valid and enforceable. *See, e.g.*, *Silec Cable S.A.S.*, 2012 U.S. Dist. LEXIS 167020, at *27 ("Such a determination of whether the case is arbitrable or not is beyond the scope of the Court's limited inquiry to decide if subject matter jurisdiction has been established under section 205."); *Beiser*, 284 F.3d at 670 (finding that even where the plaintiff was arguing that he was not a signatory to the arbitration agreement, the action still related to an arbitration agreement under the Convention and removal was proper under Section 205); *Century Indem. Co.*, 2006 U.S. Dist. LEXIS 34177, at *4-9 (denying motion to remand where the plaintiff argued no arbitration agreement existed between the parties). Plaintiff, in fact, acknowledges this legal truth in its reply. (ECF No. 53 at 11 ("[T]he issue is whether removal was proper, not whether a motion to compel arbitration would ultimately be successful . . . these are separate inquires.")) Therefore, regardless of whether the agreement to arbitrate is enforceable or not, the Court finds that the first factor for proper removal has been satisfied.

In regard to the second factor, Defendant Underwriters states that "while the Policy's arbitration provision does not specify a location for the arbitration, under the FAA's default provisions, the arbitration would occur in the Virgin Islands." (ECF No. 1 at 5.) The Policy states that the law of the Virgin Islands governs, and that the parties will submit to the exclusive jurisdiction of the U.S. Virgin Islands Courts. (ECF No. 1-2 at 4.) Additionally, the

Policy contains a Service of Suit clause to aid in "compelling arbitration or enforcing such arbitration or arbitration award" which provides that actions will be submitted to "the jurisdiction of a Court of competent jurisdiction *within the United States*." (ECF No. 1-2 at 19 (emphasis added)). Courts have found similar language to be sufficient to meet the requirements of the second factor. *See VVG Real Estate Invs. v. Underwriters at Lloyd's*, 317 F.Supp.3d 1199, 1205 (S.D. Fla. 2018) ("The arbitration clause here fails to provide any language indicating where arbitration should take place. However . . . the Policy states that '[n]o one may bring a legal action against the Underwriters under this Policy unless . . . the action is brought in the United States of America, in a court having proper jurisdiction . . . ' Thus, this language, coupled with the arbitration clause, is sufficient to meet the second . . . factor."); *German Int'l Sch. of Fort Lauderdale, LLC v. Certain Underwriters at Lloyd's*, Civil No. 2019-60741, 2019 U.S. Dist. LEXIS 80705, at *5-6 (S.D. Fla. May 13, 2019) (same). Thus, the second factor for proper removal has been satisfied.

In regard to the third factor, the relationship between the parties arises out of an insurance contract, which courts have deemed to create a commercial legal relationship. *See Certain Underwriters at Lloyd's v. Simon*, Civil No. 2007-0899, 2007 U.S. Dist. LEXIS 77686, at *13-14 (S.D. Ind. Oct. 18, 2007) ("[T]his Court finds that the agreement arises out of a commercial relationship, specifically, the Policy governs the provision of health care insurance for Simon."); *German Int'l Sch. of Fort Lauderdale, LLC*, 2019 U.S. Dist. LEXIS 80705, at *6 ("The relationship between the Plaintiff and the Defendant arises out of an insurance contract in which the Defendant will insure the property owned by the Plaintiff in the event

of certain losses. This is a commercial relationship between the insurer and insured."). Thus, the third factor for proper removal has been satisfied.

As to the fourth factor, it is undisputed that Defendant Underwriters is not a United States citizen. Defendant Underwriters asserts that it is "organized under the laws of England and Wales, with principal places of business in London." (ECF No. 1 at 7), and Plaintiff concurs with this assertion in its Complaint. (ECF No. 1-1 at 134.) This agreement between the parties is sufficient to establish this fact for the purposes of the fourth factor.[14] Thus, the fourth factor for proper removal has been satisfied.

In view of the foregoing, the Court finds that Defendant Underwriters has satisfied the four factors necessary to conclude that the arbitration agreement "falls under" the Convention. This finding—together with the Court's earlier finding that the action relates to the arbitration agreement—establishes that Defendant Underwriters has met its burden under Section 205 to show that this Court has subject matter jurisdiction over the instant matter.

The Court acknowledges Plaintiff's argument that the claims in Plaintiff's Second Amended Complaint "arise exclusively under territorial law," and do not support federal

---

[14] Lloyd's of London, is a complex associational entity "that provides the physical premises and the administrative services and staff to enable insurance underwriters to carry on their business." *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 221 (3d Cir. 1999) "Lloyd's is not an insurance company, but rather is an exchange or market where various individuals or groups bid on the right to insure a given risk." *Id.* Thus, while Lloyd's "takes no part in the business of underwriting; policies are underwritten at Lloyd's and not by Lloyd's." "This district acknowledges that an "entire body of law has emerged [nationwide] on the question of the status of Lloyd's defendants for diversity purposes" due to their complex structure. *Mohamed v. Certain Underwriters at Lloyd's*, Civil No. 2001-0128, 2002 U.S. Dist. LEXIS 29121, at *6-7 (D.V.I. Apr. 24, 2002). However, most recently, the Third Circuit appears to have affirmed—at least in dicta—a view that "Lloyd's is not a U.S. citizen." *Century Indem. Co.*, 584 F.3d at 520 n.5 (finding an arbitration clause to "fall within the Convention because the retrocessional agreements formed a commercial relationship between Century and [non-citizen] Lloyd's").

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 15 of 24

question jurisdiction under 28 U.S.C. § 1331. (ECF No. 22 at 17.) There is no dispute that

Plaintiff's causes of action as alleged in the Second Amended Complaint do not cite to federal

statutes and do not claim to arise under federal law. (ECF No. 45 at 17.) However, unlike

most forms of federal question jurisdiction which prohibit removal based on a federal

defense, Section 205 explicitly allows for such a removal. *See* 9 U.S.C. § 205 ("The procedure

for removal of causes otherwise provided by law shall apply, except that the ground for

removal provided in this section need not appear on the face of the complaint but may be

shown in the petition for removal."); *see also Infuturia Glob. Ltd.*, 631 F.3d at 1138 (stating

that Section 205 "invites removal of cases whose relation to an agreement or award under

the Convention is based on an affirmative defense by expressly abrogating the 'well-pleaded

complaint' rule."); *Beiser*, 284 F.3d at 671-72 ("As a result, absent the rare frivolous petition

for removal, as long as the defendant claims in its petition that an arbitration clause provides

a defense, the district court will have jurisdiction to decide the merits of that claim."); *Silec

Cable S.A.S.*, 2012 U.S. Dist. LEXIS 167020, at *22 ("[T]he plain language of section 205 . . .

expressly obviates the requirement in a typical removal case that subject matter jurisdiction

be determined from the face of the well-pleaded complaint, without reference to the

defenses raised."). In fact, Congress specifically intended Section 205 to provide federal

courts with "easy removal." *Beiser*, 284 F.3d at 674. Therefore, the fact that Plaintiff's claims

are all based in territorial Virgin Islands law has no impact on the ability of Defendant

Underwriters to remove the instant matter to this Court pursuant to 9 U.S.C. § 205.

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 16 of 24

### B. Waiver of Right of Removal pursuant to the FAA

Having established that the instant matter is subject to the FAA and that Defendant Underwriters is granted the right of removal pursuant to that statute, the Court must next examine whether Defendant Underwriters has waived that right of removal. Plaintiff argues that the Marshall and Sterling Defendants and THB were acting as agents of the Underwriters while engaging in litigation before the Superior Court of the Virgin Islands, and by engaging in that litigation for six years without removing the matter to federal court, have waived Defendant Underwriters' right to remove. (ECF No. 21 at 12-13.) Defendant Underwriters replies that it is not bound by the actions of the Marshall and Sterling Defendants and THB in the Superior Court litigation, and that it moved for removal immediately upon being served. (ECF No. 45 at 11.)

As an initial matter, the Court examines whether it has been established that the Marshall and Sterling Defendants and THB were acting as Defendant Underwriters' agents in the Superior Court litigation, and finds that Plaintiff has provided no basis for this conclusion. In support of their conclusory statement that the Marshall and Sterling Defendants and THB were agents of Defendant Underwriters (ECF No. 21 at 12; ECF No. 1-1 at 135), Plaintiff argues that the Policy itself identifies designates the Marshall and Sterling Defendants as "notice agents" and that, statutorily, pursuant to 22 V.I.C. § 751a(b), the Marshall and Sterling Defendants and THB are agents of Defendant Underwriters. [15] (ECF No. 53 at 12.)

---

[15] Plaintiff further argues that the Marshall and Sterling Defendants and THB are agents, as Plaintiff has identified them in the SAC as such. (ECF No. 50 at 1.) However, Plaintiff has provided no case law to support

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 17 of 24

As to its first argument that the Policy itself identifies designates the Marshall and Sterling Defendants as "notice agents," Plaintiff cites generally to the entirety of the Policy. *Id*. However, the Court can locate nowhere in the document cited by Plaintiff a point where the Marshall and Sterling Defendants are referred to as Defendant Underwriters' "notice agents." In fact, the Court's review of the document reaches the same conclusion that Defendant Underwriters present in its response: the Marshall and Sterling Defendants are only mentioned once in the entirety of the Policy, and this comes from the Policy's provision that "Notification of Claims" should be sent to an individual at "Marshall and Sterling Insurance" located in Gallows Market Place, Christiansted, St. Croix. (ECF No. 1-2 at 3; ECF No. 45 at 11.) The Marshall and Sterling Defendants and THB are never referred to as Defendant Underwriters' "notice agents." Given the lack of basis for the assertion that the Policy identifies the Marshall and Sterling Defendants as Defendant Underwriters' notice agents, this theory is not sufficient to prove that the Marshall and Sterling Defendants acted as Defendant Underwriters' agents in the instant matter.

Plaintiff's argument that the Marshall and Sterling Defendants and THB are agents of Defendant Underwriters by statute fails for a similar lack of specificity and factual basis. Title 22, Section 751a(b) of the Virgin Islands Code defines, for purposes of Title 22, Chapter 31, that an "agent" is "any person appointed by an insurer to solicit application for insurance on its behalf, and if authorized so to do, to effectuate and countersign insurance contracts except as to life or disability insurances, and to collect premiums on insurance so

---

the proposition that making a conclusory statement in a complaint is sufficient to establish that one legal entity acted as the agent of another, and the Court is aware of none.

applied for or effectuated." Plaintiff cites to this law, and concludes that "Marshall and Sterling checks every box, and as agents, their litigation conduct is imputed to Lloyd's." (ECF No. 53 at 12.) However, Plaintiff makes no showing, or even argument, for how the Marshall and Sterling Defendants concretely satisfy the requirements to be an "agent" as so defined. There is nothing in the briefing of this issue, nor in the Policy itself, which indicates that the Marshall and Sterling Defendants have been given authority to solicit applications for insurance on behalf of Defendant Underwriters, to effectuate and countersign insurance contracts on its behalf, and to collect the premiums on such insurance. Further, Plaintiff gives no reason for why it believes THB to be an agent of Defendant Underwriters, failing to even make a conclusory assertion that it meets each of the standards required to fall within that definition.

Given that all Plaintiff has provided to the Court are conclusory statements that the Marshall and Sterling Defendants and THB are Defendant Underwriters' agents—devoid of logical argument or specific allegations—the Court cannot find that these parties acted as such in the Superior Court litigation. If in fact, there is any such argument to be made, Plaintiff has failed to properly identify it to the Court, and the Court is not required to seek out support for such a conclusion of its own accord. *See Perkins v. City of Elizabeth,* 412 F. App'x 554, 555 (3d Cir. 2011) ("[A] court is not obliged to scour the record to find evidence that will support a party's claims."); *Doebler Pa. Hybrids, Inc. v. Doebbler,* 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.").

Even if the Court were to find that the Marshall and Sterling Defendants or THB acted as Defendant Underwriters' agents in the Superior Court litigation, the fact that these parties

engaged in that litigation would not be sufficient to find that Defendant Underwriters had waived its right of removal. Pursuant to 9 U.S.C. § 205, when "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, *at any time before the trial thereof*, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." The plain language of the removal statue indicates that, despite previous litigation of the matter in a local court, a matter relating to an arbitration agreement under the convention may be removed to federal court so long as trial has not yet begun.

In fact, the singular case cited by Plaintiff in which a court found that a party had waived its right of removal by failing to timely assert it supports this interpretation. The Second Circuit ruled in *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.* that the defendants-appellants had waived their right of removal, as they failed to move for the removal of the matter to district court until after the "adjudication of the entirety of the claim that the plaintiffs tendered for decision" had been completed in local court. 31 F.3d 70, 72 (2d Cir. 1994); *see also Ullrich v. Ullrich*, Civil No. 2021-0147, 2021 U.S. Dist. LEXIS 253344, at *22 (M.D. Fla. Sept. 3, 2021) ("Moreover, short of proceeding to "trial" in state court, there is no litigation-based, or conduct-based, waiver under § 205."); *Infuturia Global Ltd.*, 631 F.3d at 1139 (9th Cir. 2011) ("The language of § 205 refers to the action being removed and 'the trial thereof.' The meaning of this section is clear: a defendant may remove a qualifying state court action to federal court at any time before the claims raised in the state court action have been adjudicated.") (emphasis omitted); *VVG Real Est. Invs.*, 317 F.Supp.3d at 1207

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 20 of 24

("Under Section 205, a defendant 'may, at any time before the trial thereof, remove such action or proceeding . . . .' Thus, a motion to stay filed several months after the original suit was filed should not be grounds for a waiver of right to arbitration."); *Pan Atl. Grp., Inc. v. Republic Ins. Co.*, 878 F.Supp.630, 638-40 (S.D.N.Y. 1995) (acknowledging that "[t]he critical issue with respect to removal under Section 205 is whether the removal took place 'before the trial'" and finding removal untimely as an opinion had already been issued in local court which "adjudicated the merits of the only issue which, had there been a substantial factual dispute, could have required a hearing.") The Third Circuit has itself rejected the argument that a failure to remove at an earlier period in litigation constitutes a waiver, holding that "while participation in litigation and discovery may well be relevant to the question of whether [a party] has waived its right to arbitrate, it is irrelevant to the question of removal under the Convention Act, which provides that a defendant may remove 'at any time before trial' and imposes no requirement that [a party] show cause for the delay [in removing]." *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 162 (3d Cir. 2000).

It is undisputed that no trial has begun in this matter. Despite the fact that the original Complaint in this matter was filed over five years ago, no dispositive issues have yet been adjudicated in Superior Court, and there is no indication that any hearing has been held. *See Plessen Eye, LLC v. Marshall and Sterling, Inc.*, Case No. SX-2019-CV-005000 (Super. Ct. filed Sept. 20, 2019). Therefore, Defendant Underwriters has not waived its ability to remove by failure to earlier exercise that ability.

Plaintiff also argues that Defendant Underwriters has contractually waived its right to removal in the forum selection clause of the Policy. (ECF No. 21 at 1-9.) Specifically,

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 21 of 24

Plaintiff asserts that the insurance policy contains a mandatory forum selection clause requiring "exclusive" jurisdiction in the Court of the Virgin Islands and that the arbitration clause also contained in the Policy does not override this forum choice. *Id*. Defendant Underwriters disputes this, arguing that the forum selection clause does not stand alone, and in the context of the Policy does not deprive this Court of jurisdiction. (ECF No. 45 at 17-22.)

The Policy itself contains, in relevant part, the following provisions.

> **CHOICE OF LAW & JURISDICTION:** This insurance shall be governed by and construed in accordance with the laws of the U.S. Virgin Islands and each party agrees to submit to the exclusive jurisdiction of the U.S. Virgin Islands' Court.

(ECF No. 1-2 at 4.)

> **12. Arbitration** If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.
>
> The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expense of the arbitrators and the charges of the umpire.

*Id*. at 18-19.

> **13. Service of Suit** This Service of Suit clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in the Arbitration provision within this Policy. This clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this Insurance.
>
> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent

> jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the Untied States or any State in the United States.

*Id.* at 19.

The Court finds that Defendant Underwriters has contractually made an unambiguous waiver of its right to remove this matter to federal court pursuant to the FAA. It is well established that a party can contractually waive its right to removal under the FAA. *See In re: Amoco Petroleum Additives Co.*, 964 F.2d 706, 712 (7th Cir. 1992); *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 158 (3d Cir. 2000); *Ullrich*, 2021 U.S. Dist. LEXIS 253344, at *22. However, for this right to be waived, the agreement between the parties must include "clear and unambiguous language requiring such a waiver." *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 158 (3d Cir. 2000); *see also Ario*, 618 F.3d at 289–90 (same); *In re: Amoco Petroleum Additives Co.*, 964 F.2d at 712 ("[P]arties may waive their right to remove under [§ 205] but only by express language."); *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1209 (5th Cir. 1991) ("[W]e will give effect only to explicit waivers of Convention Act removal rights.").

The Third Circuit has recognized the language used in the Policy as constituting "clear and unambiguous language requiring such a waiver." *Suter*, 223 F.3d at 158. Specifically, the Policy states that "each party agrees to submit to the exclusive jurisdiction of the U.S. Virgin Islands' Court." (ECF No. 1-2 at 4.) In *Ario v. Underwriting Members*, the Third Circuit, citing to a Fifth Circuit Case, used "a choice-of-law provision in an insurance policy . . . . where the parties agreed that '[a]ny disputes arising under or in connection with [the insurance policy]

shall be subject to the exclusive jurisdiction of the Courts of Dallas County, Texas'" as an example of language which would meet the clear and unambiguous standard and constitute an explicit waiver of the right of removal. *Ario*, 618 F.3d at 289–90 (citation omitted). Specifically, the Third Circuit held that the language "exclusive jurisdiction . . . is fundamentally incompatible with the preservation of the right to remove" and noted that the judges in the majority of *Ensco Int'l, Inc.* found that "[a]ny other interpretation would read the word 'exclusive' out of the contract, and ignore the well-understood meaning of exclusive." *Id.* (citation modified); *see also Northport Health Servs. of Arkansas, LLC v. Ellis*, Civil No. 2020-CV-02021, 2020 U.S. Dist. LEXIS 62901, at *6 (W.D. Ark. Apr. 10, 2020) (holding that a "choice-of-law and forum-selection clause identifying 'Sebastian County, Arkansas' as the 'sole and exclusive venue'" waived the parties' right of removal pursuant to the FAA.)

The Court, in line with the Third Circuit's holding in *Ario*, finds that the Policy's statement "each party agrees to submit to the *exclusive jurisdiction* of the U.S. Virgin Islands' Court," ECF No. 1-2, constitutes a clear and unambiguous waiver of the right to remove. As the Court has now concluded that this clause bars Defendant Underwriters from the removal of this case, it may no longer continue to rule on its merits or examine the substantive arguments made. *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1215 (3d Cir. 1991) (asserting the propriety of a district court to accept jurisdiction of a case and, in the exercise of that jurisdiction, determine, as a threshold matter on the merits, whether a party had contractually waived its right to remove the case, but noting that "once it determined that the clause barred [a party] from removing, it would have been committing clear error—and

*Plessen Eye, LLC, v. Marshall and Sterling Enters., Inc.*
Case No. 1:25-cv-0026
Memorandum Opinion
Page 24 of 24

violence to the parties' contract—had [the district court] nevertheless continued to hear the case.").[16]

### IV.    CONCLUSION

For the reasons stated herein, the Court will grant Plaintiff's Motion to Remand and remand this case to the Superior Court of the Virgin Islands, Division of St. Croix. All pending motions in this case are hereby moot.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 26, 2026                                        */s/ Robert A. Molloy*
                                                                **ROBERT A. MOLLOY**
                                                                **Chief Judge**

---

[16] Finally, Plaintiff makes the argument that Defendant Underwriters waived its right to compel arbitration, and therefore its right to remove under the FAA pursuant to an arbitration clause, by acting in a manner "inconsistent with an intent to arbitrate" by filing a motion to dismiss the Second Amended Complaint on the merits. (ECF No. 21 at 15.) Defendant Underwriters disputes this, asserting that the filing of the motion to dismiss, which occurred on the same day as the filing of the motion to compel arbitration, does not constitute a waiver of its ability to enforce the arbitration clause within the Policy. (ECF No. 45 at 13.) However, whether the arbitration clause is enforceable is not a factor in determining whether remand is appropriate, which is the relief Plaintiff seeks here. Only once jurisdiction is determined is the court to turn to the enforceability of the arbitration agreement, a question which requires it to consider whether the agreement is "null and void, inoperative or incapable of being performed." *Miller v. Tri Marine Fish Co.*, Civil No. 2016-02203, 2016 U.S. Dist. LEXIS 83936, at *16 (C.D. Cal. June 28, 2016). However, "Section 205 does not include any requirement that, as a prerequisite for removal, the removing party establish that the arbitration agreement is valid and enforceable." *Id.* at 14. Therefore, even if the Court presumes, for the sake of argument, that Defendant Underwriters has waived its right to enforce the Policy's arbitration clause by filing its motion to dismiss, this does not deprive the Court of jurisdiction over the instant matter.